May it please the Court, good morning. Quinn Denver, I represent the appellant, Mr. Dickey-O'Brien, and I would like to reserve four minutes if I could. Just watch the clock, Mr. Denver. I will. We've raised two issues here. One of them is whether it's about the continued competency of the defendant to stand trial. We believe that there were two events that occurred on the 13th day of the trial, which raised a substantial doubt as to his competency to stand trial and required a hearing on that. We have, particularly in light of his history of mental illness and the finding of incompetency earlier, things of that nature, I think that is fully briefed. And unless the Court had some questions. Sotomayor I do have a couple questions about it. With respect to the judge's comment that we've had some difficulties or some word like that, is there anything else in the record other than that comment? There is, other than he said he brought it to the attention of the mental health director, who was not a psychiatrist or psychologist, was a licensed social worker. And that person said, I'll take care of it. I think that's right. I'll do my best to take care of it. I quoted the language. Right. And that's all there is in the record. That's all there is. And similarly, it is the prosecutor's statement that Mr. Dickey O'Brien is sitting motionless at the table. That's the entire record on that incident. And then it looks like he's either under medication or not paying attention. Well, it's whatever the prosecutor said is the only thing in the record. That's all there is. Okay. Thank you. That's all there is. But we think that if you take those two comments, particularly the prosecutor's statement as being almost comatose. Well, that isn't exactly what he said, almost comatose. He said motionless and mute demeanor during the proceedings. Right. And it says it so that people could, it would suggest that he, you have the rest of it in front of him, that he was either under medication or something. I don't have it in front of me. Well, I had it in front of me, and I was interested in my colleague's question because that was one day of the trial, and the prosecutor said it, and the only other thing is I have a reference to vague difficulties by the DJ. And other than that, I don't have anything in this record to tell me that his demeanor during the trial was bad or different or difficult at all, do I? No, you don't, Your Honor. What you have is a statement of the prosecutor and neither the court, defense counsel, in any way question if they accepted it for what it was. I assume, therefore, that it was accurate. And it was not just that he was sitting there, but it also, from which someone could conclude, and I don't have that right in front of me, but I've certainly quoted it elsewhere. So what facts known to the trial court during the trial should I glean from this record that I haven't gleaned that would demonstrate that his mental status deteriorated so greatly after the May 2002 determination?  There are only two I can find. That's correct. But the history of it, of course, is he was found incompetent. He was sent to a State hospital. He was returned and found competent again. There were certain recommendations as to how he should be treated, including being put in a psychiatric facility, which was not done. He was kept in the county jail. So now, after about six weeks, after I think it's the 13th day of trial, there is this description of him as being mute and almost motionless. And the significance of that is he was found incompetent. So he was put in a psychiatric facility.  And there are certain recommendations as to how he should be treated. And the significance of that is he was found incompetent. So now, after I think it's the 13th day of trial, there is this description  And the significance of that is he was found incompetent.  He was found incompetent once. He was sent away to get competent. They said he was. They got him in. They said he had to go forward, do what he had to do. He did, I guess. Well, Your Honor, I think the point is that the Court has an ongoing duty to monitor the competency. Well, I understand he does. And these two things occurring were enough, we believe, to raise a reasonable doubt as to his continued competency. Does it matter in this case who the trial judge was? The trial judge, I've read this transcript, and the trial judge was incredibly solicitous through the early parts of this case, called for the competency determination when they came back and had the trial on competency, wanted to make sure that counsel was monitoring this person, very well represented, it appears at trial. Same lawyer who had represented him all along, asked counsel all the time whether he was taking his medications and doing okay. And in this record, we've got nothing from defense counsel, who had not hesitated at all to raise competency issues before. A remark by a prosecutor that he's making it and saying, I think this guy is trying to feign insanity. So judge, you know, could you tell him not to sit like that? And the judge quite properly says, I can't tell him how to sit. He can sit however he wants. No, I think the way it came up, actually, Your Honor, was that he said, he described this, and said that the jury may feel that he's not competent or he's not competent. And therefore, I'd like to call a witness to go the other way. Well, like Judge Smith, I've read the transcript. And what he said is he's putting on an insanity defense. That's all the trial is about. And he says, I think he's trying to, in effect, testify to the jury by sitting there motionless, that he's insane. And I'd like to bring in people to show that he's not motionless most of the time. And the judge says, he's got a First Amendment right or a Fifth Amendment right to sit however he wants. If he's making a statement to the jury that way, you can't cross-examine him about it, and so I'm not going to let you. But it's not raised in this – it's not raised – and defense counsel says the same thing. He can sit however he wants, Your Honor. That's his right. And so I'm not sure I see in this anything that, to a trial judge that had followed this defendant for months and months and had gotten reports and was making sure he was taking his meds and everything else, these two incidents don't, to me, seem to arise to that level. I think the thing is, Your Honor, that the judge did a lot up to, I think, November 19th, the competency hearing, and made many findings. But there's no – I don't think there's any indication that he ever addressed that afterwards. And I think what's important about this is this motionlessness, this – Do we know how long it lasted from the record? I'm sorry. Do we know how long it lasted from the record? All that – he says he's sitting motionless at counsel table. Do we know how long it lasted? Oh, he said – oh, you mean when the prosecutor's – Yeah. No, he said he has been. He didn't say how long it was. But I think the point that – Because what it seemed to me like, with all respect to the prosecutor, was the prosecutor was overreaching. What he then wanted to do was call – he then wanted to call a witness to say he doesn't sit motionless most of the time, and the judge properly slapped him down. I don't see in that any sort of evidence of incompetence. The only point I'd say is that the judge, in saying he was restored to competency, pointed out the fact that he was alert, paying attention, talking to counsel, and this was the opposite of it, and that these kind of things – you have sometimes a passive incompetence, you have an active incompetence, somebody throwing things on there. But I want to say is, I think you understand my argument, and I want to hear your – And I want to hear your second argument. Yeah, the other – if that's – if there's other questions on that one. You may reserve counsel. Okay. So this – our other claim is that the instruction which set forth the elements of a not guilty by reason of insanity defense was so ambiguous that it rendered the trial fundamentally unfair and, therefore, violated due process. Now, there's no dispute as to certain things. First, there's no dispute that the test for not guilty by reason of insanity in GI in California is what they have set forth in the McNaughton case. Well, there – I think there is some dispute about that. The California Supreme Court says that's what it is, but that's not the way the statute reads. The statute – well, the statute – what the California Supreme Court said, and they are the ones who interpret the statute, is that it reinstated the McNaughton test as it was prior to the Drew decision. That is the – Right. But you agree that the statute read just – not the instruction. Forget the instruction for a second. That the statute doesn't seem to really embody the McNaughton test, does it? It doesn't use the words of it. But it is – that is – the difference is between a statute that establishes the defense, which the Supreme Court said brought in the McNaughton – the McNaughton standard, and an instruction that then states that standard. Well, but the instruction read the statute, did it not? The instruction tracked the language of the statute. Right. Tracked the language of the statute. Right. And so let's assume for a second that the statute doesn't track McNaughton. The language of the statute doesn't track McNaughton. And it doesn't. And that's your position. What difference does that make? Do you have a constitutional right to a McNaughton instruction? You have a constitutional right to have a – an instruction on any defense that's supported by the evidence. I've said that before. But where is it contrary to Federal law as determined by the Supreme Court of the United States? Oh, I've got to find that. Since we're on AEDPA standard of review here. You don't have to find my reply brief. We dealt with it directly in your case, but you didn't tell it in the U.S. Supreme  Well, there are cases that say that your due process is violated if an instruction is given that's so ambiguous that nobody can understand it. But I understand this instruction. I just don't – I just also understand it not to track McNaughton. I'm interested in knowing what is your contention that there is a violation of a Federal law as determined by the Supreme Court. In Matthews v. United States, 485 U.S. 58, at 63, the Court held that a defense entitled to an instruction to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor. This Court, in Bradley v. Duncan, 315 Fed 3rd, 1019, at 1098-99, held that that was clearly established law for purposes of the Anti-Terrorism Act. What do I do with Waddington v. Sarosad? That's a 2009 Supreme Court case, and it says, It is hard to do, but the Ninth Circuit has also held that if the statute – excuse me, the statute itself is – I'm not listening to the Ninth Circuit here now. Well, it – What my colleagues say about that really doesn't have any – I'm looking for what does the Supreme Court say about that? The Supreme Court says – I understand. And they'll interpret it any way they get a chance. I understand. And so I want to know what does the Supreme Court say? The Supreme Court said it is difficult to do. It didn't say it's impossible. Well, I said it's a heavy, especially heavy burden. And we meet that – And I guess I'm trying to figure out why it is an especially heavy burden here. Because – Because I don't have a Supreme Court case saying it is. It says – I never – no Supreme Court case that says Cal JIC number 4.00 is just wrong. It's not the way it needs to go. But it does – there are Supreme Court cases that say that we're entitled to an accurate statement of the defense. The one that you're quoting – I'm still not sure, even if the Supreme Court cases say that, why this wasn't an accurate statement of the defense. California's passed a statute that says here are the elements of – here's what you've got to show to show insanity. And the judge read that statute to the jury. You're saying, well, a California Supreme Court's interpretation of that statute in your mind conflicts with the statutory language. But the judge read the statute to the jury. Why didn't – your guy got the benefit of the defense he, de facto, called for, didn't he? Well, he didn't, because the language of the instruction does not cover the real test, the McNaughton test. It says, can you distinguish right from wrong at the time of the commission of the crime? That is the general question of, can you understand right or wrong in the abstract in general? That is the standard that McNaughton tossed out. But the California Supreme Court has said that giving the statutory language as an instruction corresponds with the law, hasn't it? Not if – not if the statute itself is ambiguous. Well, no, that's not my question. I don't – I understand your ambiguity argument. Well, that's my – that's my great burden I'm trying to – I'm trying to meet. But the California Supreme Court has said that, look, if you give the language of the statute, you've done what you're supposed to under the law. The California Supreme Court cases say that. They've said that in some cases. They've never said that that always is true, that there's nothing ever required – I can – I can brief that if you'd like. Counsel, you're down to a minute and a half. I know you want to reserve some time. No, I'd like to finish up a little more on this. Very well. So the problem is that language just doesn't fit the McNaughton standard. And – and the important thing here is, is that we had a defense expert who said that this defendant, while he may have known that – that shooting a gun at somebody was wrong in the abstract, he didn't know that his act of doing it was because he believed that that person was possessed by a demon. And this expert, Dr. Howell, also – he said, Mr. Rain Dickey does not meet the McNaughton standard. The problem, then, is that there's – there's – the jury doesn't know that the McNaughton standard is – is applicable. In fact, this – this expert, forensic expert, says apparently California's gone – gone away from the McNaughton standard. So this key point – the key point of this is you've got an expert who's going to say this person is not guilty by reason of sanity under the McNaughton standard, which is the one that the California Supreme Court says there. The jury could never figure that out from this language. There's no way – this language does not tell them that. It's at least ambiguous. And if it's at least ambiguous and could be done in the wrong way, done this right and wrong in the abstract, then you go to the Boyd v. California test that we've set forth. Roberts. So I understand your argument, and I know your – your clock is expiring here. But your argument is that it's ambiguous because the standard is really the McNaughton standard. Right. Is it ambiguous on its face? It's ambiguous because it doesn't say whether it's – whether – whether it's right and wrong about his own action or in general. It just says at that particular point in time, you have to look to whether he understood right from wrong. That's what I think the language actually was. And – and the argument is that that is not sufficient. Thank you, counsel. Your time has expired. We'll hear from the State. Good morning, Your Honors. May it please the Court, Brian Means for the appellate – appellee and warden. I'll just briefly touch on the instructional error issue. Our response is a simple one. The Federal court can't second-guess the State court's interpretation of State law. And more to the point, when you have a California court of appeals saying that this is State law and the California Supreme Court denies review and declines – or leaves that decision undisturbed, that's the end of the matter. At least that's what the Supreme Court tells us in a long line of cases, the last one being Hicks v. Felock. Second of all, the statute itself is consistent with the ballot language from 1982. There's no mention of the McNaughton standard in there. It's consistent, almost verbatim, with California Penal Code section 29B. What are we to make of the California Supreme Court saying the statute embodies the McNaughton standard? Well, I'm not sure exactly what they mean by that because it doesn't do that precisely. But I think we have to look at it in the context of McNaughton generally. And the Supreme Court recently in Clark made reference to the fact that the United States or, yes, the United States and 17 individual States use some version of the McNaughton test. And there are commentators who recognize that the McNaughton test isn't completely static, that courts tweak it in different jurisdictions their own way. And that appears to be exactly what happened here. It's, by and large, a McNaughton test, and it's been modified somewhat. Is the statutory language on its face ambiguous? No. If any dispute is to that. And, in fact, the California Supreme Court cases are consistent with the California Court of Appeals' understanding of the instruction and CALJIC 410 itself. Initially, in the Kelly decision, they quoted verbatim the language of this very jury instruction and then endorsed it. Now, admittedly, they weren't faced directly with this issue, but they quote the entire language of the instruction. Yeah, but they did say that citing the statutory language complied with the ballot initiative. I mean, that's what the California Supreme Court decision did say, that if you give the statutory language, you've given the correct instruction. Yes. It's not dealing with this ambiguity issue. That is correct. We don't have a direct California Supreme Court decision on this, or we wouldn't even be here on it. But the fact that we have the Court of Appeals' determination coupled with the fact that that was undisturbed by the California Supreme Court should be a complete lock on the issue. There shouldn't be any room now for debate, like I said, at least according to the United States Supreme Court's line of authority. In addition, it's not only consistent with Kelly, it's also consistent with Jablonski. When this issue was squarely presented to the Court, they kind of bypassed it, but in doing so, they specifically had mentioned that this particular argument was based on, and I quote, a strange reading of Calgic 410. So they don't appear very receptive to this matter as well. And certainly, there's nothing to show that what the California Court of Appeals did in this particular context could have violated clearly established law. If there are no questions, I'll move on to the competency aspect of the hearing. The Court's already aware of the standard, only has shown a bona fide doubt. And this Court recently in Clark v. Arnold, just decided a couple of months ago, recognized the, quote, high bar that that is, and the need to show the substantial change of circumstances. And some courts outside this circuit have indicated that there's a continuing presumption of competency once there has been a competency determination, as was done in this case. Roberts, can you focus on the incident involving the so-called difficulties? What and tell us what that tells us on the record. Well, you know, we have two that have been identified in this particular case. The first one was where the prosecutor notes that. I'll concentrate on the one that my good colleague quizzed you about directly. Which one is that? There were two. The one where the court. The one where the court says the defendant was having some difficulties. Well, I really can't add much to that beyond what the record states. It's an ambiguous statement. I think we have to look at it in context. The judge here was focusing very carefully on this individual from day one. It's a model of what a trial judge should do when he's dealing with somebody who has mental problems. And it defies credulity to believe that this trial judge would have heard a remark like that and then just simply. Well, no. I'm now talking about the judge's remark, not the remark by the prosecutor. But the judge's remark, I think it was the judge's remark. I may be mistaken. Oh, referring to the difficulties. The difficulties, yes. By page 997 of the record, he's aware of whatever difficulties, and that he will do whatever he thinks. That's right. That's all we have, though. Whatever difficulties they were in light of the fact that this judge was squarely on top of the mental health issues, evidently, whatever it was, whatever that may be, was satisfactorily resolved. Well, I have a follow-up question. On page 998, there is, at line 18, there's also been the issue as to his conduct in the jail during and since the trial has started. What is that a reference to? We don't know. This to the extent there was something there, it should have been developed on state collateral review, and then we would have had a record. Of course, under Penholster, it's too late to do that now. So what we're left with are some ambiguous references to what we can't make much of, and I don't think that's enough to show a bona fide reason for the trial court to have had a competency hearing in light of all the other things. It's insufficient showing that it should have caused him to doubt competency. Is that the question? That's right. I mean, it's a high burden the Petitioner appellant has to meet here. And there are some curious statements in the record, as you've identified, but that's all they are. And it's just not enough to overcome the substantially high burden of showing a bona fide doubt in light of the prior competency determination, particularly in light of the findings of fact in the ADPA standards that apply in this particular context. Anything further, counsel? Nothing, Your Honor. No questions. Thank you very much, counsel. The case just argued will be submitted for decision, and the Court will proceed to hearing the next case, which is United States v. I believe it's Quiel and Kerr.
judges: O'scannlain, Smith, Hurwitz